**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0567n.06

No. 12-3728

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 11, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DAVID A. KATRENICK, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

**Before:  MOORE and GRIFFIN, Circuit Judges, and SARGUS, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.**  Defendant David Katrenick pleaded guilty to two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  At sentencing, the district court varied upwards from Katrenick's Guidelines range of 57 to 71 months and imposed a sentence of 110 months of imprisonment.  On appeal, Katrenick asserts that he did not make his guilty plea knowingly, voluntarily, and intelligently, in violation of Federal Rule of Criminal Procedure 11.  Katrenick also challenges the procedural and substantive reasonableness of his above-Guidelines sentence.  Finding these arguments to be meritless, we **AFFIRM** the district court's judgment of conviction and imposition of a sentence of 110 months of imprisonment.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

**I.**

The government charged Katrenick with two counts of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Because of his extensive criminal history and his corresponding concern that he might be subject to enhanced penalties as an Armed Career Criminal ("ACC") under 18 U.S.C. § 924(e), Katrenick requested that the district court order a pre-plea presentence report ("PSR"). R. 14 (Def. Mot. at 1) (Page ID #39). The district court ordered the requested pre-plea PSR, R. 15 (D. Ct. Order at 2) (Page ID #47), which indicated that Katrenick would be sentenced as an ACC and, as such, would be subject to a fifteen-year mandatory minimum sentence.

Katrenick decided to plead guilty at a change of plea hearing. R. 37 (Change of Plea Hr'g Tr.) (Page ID #233–57). At that hearing, the district court confirmed that Katrenick was changing his plea knowingly, voluntarily, and intelligently. *Id*. at 8–24 (Page ID #240–56). With regard to the possible punishment Katrenick could face, the district court informed him that "the penalty, mandatory minimum 15 years to life, $250,000 fine, or both, and up to five years of supervised release." *Id*. at 12 (Page ID #244). The district court expanded on the mandatory minimum:

> The Court: [I]n this case we have a preliminary designation that Mr. Katrenick is an armed career criminal?
>
> [The Government]: That is correct . . . .
>
> The Court: Okay. And Mr. Katrenick, again, you've had the opportunity to discuss this with [your attorney,] Mr. Saffold?
>
> The Defendant: Yes, sir.

The Court: And you understand that there is a mandatory minimum as a result of that?

The Defendant: Yes, sir.

The Court: Okay. And Mr. Saffold, are you satisfied professionally that Mr. Katrenick understands that ramification.

Mr. Saffold: I am, Your Honor. Let me indicate for the record that what I've told Mr. Katrenick is there still will be an analysis done by the Court's Probation Department to determine whether he formally does qualify, but I've indicated to him that based on his preplea/presentence report we did for purposes of criminal history, there was a *suggestion* that, in fact, he would qualify, and he's under the belief as he pleads today he *may qualify*, but certainly that's something *we will ask the Court to take up at the sentencing date*.

The Court: That's exactly right, Mr. Katrenick. *At the time of sentencing* we'll review everything we have. We'll take a look at the complete report, again, your criminal history, and I'll listen to both sides and *make that final determination as to whether you qualify as an armed career criminal*. And I fully understand that your plea today is based on that assumption. Okay?

All right. And talking about the report, if I do accept your plea of guilt today, that will start the preparation of a presentence investigation report. You'll have sufficient time to sit down with counsel and go over it in detail. And if you think there are any errors, changes, or modifications which should be made, you'll let Mr. Saffold know. He'll bring that to our attention, and we will deal with those at the time of sentencing. Of course, he'll do his own legal analysis, as well as the government. Do you understand that?

The Defendant: Yes, sir.

*Id*. at 13–14 (Page ID #245–46) (emphasis added). The district court accepted Katrenick's guilty

plea. *Id*. at 23 (Page ID #255).

Prior to sentencing, both parties filed motions regarding Katrenick's status as an ACC. The

parties disputed whether Katrenick's 1986 burglary and financial transaction charges should be

3

counted as final convictions for the purposes of deeming Katrenick an ACC. Although Katrenick was found guilty on both charges, convictions were not entered because Katrenick qualified for Georgia's "First Offender Act." Under this Act, Katrenick's convictions would not be entered if he completed five years of probation. Katrenick did not complete probation, as he was convicted for rape and aggravated assault in 1990. Although Katrenick failed to complete probation successfully, no convictions were entered for his 1986 burglary and financial transaction charges. Because no convictions were entered, the district court ultimately sided with Katrenick, removing the possibility that he would be subject to a fifteen-year mandatory minimum as an ACC. The final PSR was prepared accordingly, resulting in a Guidelines range of 57 to 71 months of imprisonment and a statutory maximum of 120 months of imprisonment.

At sentencing, Katrenick's counsel argued for a downward variance based on several factors. First, defense counsel discussed the support from family and friends who considered Katrenick to be a decent person. R. 42 (Sent'g Hr'g Tr. at 5–6) (Page ID #300–01). Second, defense counsel noted that most of Katrenick's convictions—and all of the ones involving violence—occurred more than twenty years before the instant case. *Id*. at 6–10 (Page ID #301–05). Thus, according to defense counsel, the PSR over-represented Katrenick's criminal history. Third, defense counsel argued that this was a case where firearms were possessed for hunting, not for the furtherance of other crimes. *Id*. at 10–12 (Page ID #305–07). Finally, defense counsel noted that nationally, the average sentence for a felon in possession of a firearm was forty-six months of imprisonment. *Id*. at 12 (Page ID #307).

In response, the government sought an upward variance to the maximum under the statute—ten years of imprisonment. The government argued that Katrenick was not simply using the firearms for hunting; rather, Katrenick was storing guns for friends and had, on occasion, sold firearms. *Id*. at 14 (Page ID #309). The government also contended that being a "likeable guy" was not grounds for a variance. *Id*. at 14 (Page ID #309). Finally, the government disagreed that Katrenick was reformed, noting that he violated his parole in 2002 and returned to prison until 2007 and that in 2009 he was convicted of drug possession and possession of criminal tools. *Id*. at 14–15 (Page ID #309–10).

In its review of the 18 U.S.C. § 3553(a) factors, the district court noted that the PSR identified two factors that warrant an upward variance: Katrenick's criminal history and likelihood of recidivism. *Id*. at 25 (Page ID #320). Looking to the other §3553(a) factors, the district court highlighted that Katrenick

> [d]id serve some long terms. A couple of criminal convictions that are violent, of course. Didn't want to go into the details. They're pretty nasty. So we have the majority of the convictions occurring in the 20's. We have, of course, the present offense, 2010 conviction for drug possession, and we have an absence of convictions from 2002 to [20]07 because he was in prison. This offense was committed while under community control. On the other hand, to his benefit, he establishes his own business, maintains sobriety for several years. Again, many good letters from family and friends who know him.

*Id*. 29 (Page ID #324). The district court continued that "just like every other case, there's a push and pull involved. . . . I've gone over a lot of the bad and also talked about the good family support, your own business, stayed sober for some years now." *Id*.

The district court then stated that it understood Katrenick's argument about hunting "but these were not just a rifle or two rifles you took in the woods and decided to hunt. I mean you moved these things, too. Sold rifles. You just didn't go out and hunt. That bothers me. Bothers me you committed this offense while on probation." *Id* at 29–30 (Page ID #324–25). Katrenick's counsel replied that although Katrenick had traded a weapon for another weapon and two weapons for an ATV, he did not "receive[] a dollar in exchange for a weapon." *Id*. at 30–31 (Page ID #325–26). The district court found this argument unavailing, stating that it was "not concerned about whether he got actual money for it as much as the weapons weren't just used for hunting." *Id*. at 31 (Page ID #326). The district court imposed a sentence of 110 months of imprisonment, based on an upward variance of five levels to an offense level of twenty-four under the Guidelines.

## II.

Katrenick argues that he did not enter his plea knowingly, voluntarily, and intelligently because "he did not understand the penalties to which he was subject." Appellant Br. at 18. In particular, Katrenick presses that he entered his guilty plea "under the impression, based on the initial, criminal history only, presentence report, and the judge's statements during the plea colloquy, that he would be an armed career criminal, and thus be subject to imprisonment for a mandatory minimum fifteen years." *Id*. at 19. Because Katrenick raises this argument for the first time on appeal, we review for plain error. *See United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).

Katernick's argument is completely without merit, considering that the district court expressly left open the issue of whether Katrenick should be sentenced as an ACC and that all parties

understood the same. R. 37 (Change of Plea Hr'g Tr. at 13–14) (Page ID #245–46). Furthermore, Katrenick's reliance on *Pitts v. United States* is misguided because there we dealt with "affirmative misstatements of the maximum possible sentence." 763 F.2d 197, 201 (6th Cir. 1985). In the present case, there was no misstatement because the district court explicitly told Katrenick that "[a]t the time of sentencing" it would "listen to both sides and make that final determination as to whether you qualify as an armed career criminal." R. 37 (Change of Plea Hr'g Tr. at 14) (Page ID #246). The district court did exactly that: at sentencing it listened to both sides and found that Katrenick did not qualify as an ACC. Finding no error, much less plain error, we affirm the district court's acceptance of Katrenick's guilty plea.

## III.

Katrenick contends that his sentence is procedurally unreasonable because the district court "did not rule on his request for a below-Guidelines sentence or adequately explain the significant upward variance." Appellant Br. at 9. We disagree.

We review the district court's sentencing determination for procedural reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). For procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. "The sentencing judge should set

forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). However, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Id*.

In short, the record shows that the district court gave serious consideration to Katrenick's argument for a downward variance but decided on an upward variance based on Katrenick's criminal history, likelihood of recidivism, and possession of weapons, while on probation, for purposes other than hunting. Katrenick's arguments for a downward variance were far from complicated, and the district court adequately addressed them and then explained its reasons for imposing an above-Guidelines sentence. R. 42 (Sent'g Hr'g Tr. at 25–31) (Page ID #320–26). Therefore, Katrenick's sentence is procedurally reasonable. To the extent that Katrenick contests the substantive reasonableness of his sentence, we reject his challenge and hold that Katrenick's sentence of 110 months is substantively reasonable.

**IV.**

For the foregoing reasons, we **AFFIRM** the district court's judgment of conviction and imposition of a sentence of 110 months of imprisonment.